**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES and NATIVE ECOSYSTEMS COUNCIL, <br><br> Plaintiffs-Appellants, <br><br> v. <br><br> FAYE KRUEGER, Regional Forester of Region One of the U.S. Forest Service; et al., <br><br> Defendants-Appellees. | No. 14-35350 <br><br> D.C. No. 9:12-cv-00150-DLC <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Montana
Dana L. Christensen, Chief Judge, Presiding

Argued and Submitted October 7, 2016
Seattle, Washington

Before: W. FLETCHER, FISHER, and N.R. SMITH, Circuit Judges.

Plaintiffs Alliance for the Wildlife Rockies and Native Ecosystems Council

("Alliance") appeal the district court's grant of summary judgment to the

Defendants. Alliance moved to enjoin the Forest Service from implementing the

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Cabin Gulch Vegetation Project ("Project") in Helena National Forest in Montana based on violations of the Endangered Species Act (ESA), the National Forest Management Act (NFMA), and the National Environmental Policy Act (NEPA). The district court granted summary judgment to the Forest Service on all claims except one, enjoining the Project for violating Section 7 of the ESA. The Forest Service remedied the violation and moved to dissolve the injunction. The district court granted the motion, finding the ESA deficiency cured. We affirm.

"Because NFMA and NEPA do not provide a private cause of action to enforce their provisions, agency decisions allegedly violating NFMA and NEPA are reviewed under the Administrative Procedure Act ('APA')." *Native Ecosystems Council v. U.S. Forest Serv.*, 428 F.3d 1233, 1238 (9th Cir. 2005). Similarly, we review ESA claims under the APA standard, "[i]rrespective of whether an ESA claim is brought under the APA or the citizen-suit provision." *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 481 (9th Cir. 2010). "Under the APA, we may set aside an agency decision if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Native Ecosystems Council*, 428 F.3d at 1238 (quoting 5 U.S.C. § 706(2)(A)).

First, the Forest Service did not violate NFMA in concluding that the Project is not likely to adversely affect elk habitat effectiveness and security. The

applicable regulations required "the responsible official" to "consider the best available science in implementing and, if appropriate, amending the [forest] plan." 36 C.F.R. ~ 219.(a) (2011). The Forest Service relied on the Christensen and Hillis studies, the best available science, and we can find no record evidence that it ignored other relevant data. Because this Court's review of scientific judgments and technical analyses within the agency's expertise is "at its most deferential," *see Great Old Broads for Wilderness v. Kimbell*, 709 F.3d 836, 846 (9th Cir. 2013) (citation omitted) (internal quotation marks omitted), we conclude that the Forest Service has complied with NFMA.

Second, the Amendments to the Forest Plan met NFMA requirements. NFMA directs the Forest Service to develop a "Forest Plan." *See Great Old Broads*, 709 F.3d at 849–50. "After a Forest Plan has been developed and implemented, the NFMA prohibits site-specific activities that are inconsistent with the governing Forest Plan." *Id.* at 850; *see* 16 U.S.C. § 1604(i). "[T]he Forest Service's interpretation and implementation of its own forest plan is entitled to substantial deference." *Native Ecosystems Council v. Weldon*, 697 F.3d 1043, 1056 (9th Cir. 2012). The 2000 NFMA regulations were in place when the Project was adopted and the Amendment approved, and they explicitly permit the Forest Service to use 1982 rule procedures for Plan Amendments. 36 C.F.R. § 219.35(b)

3

(2011). The 1982 regulations provide, in relevant part, "[i]f the change resulting from the amendment is determined not be significant . . . the Forest Supervisor may implement the amendment following appropriate public notification and satisfactory completion of the NEPA procedures." 36 C.F.R. § 219.10(f) (2000). The Forest Service complied with the 1982 procedures.

Third, Alliance argues that the EIS failed to "fully address cumulative environmental effects or 'cumulative impacts.'" Alliance's arguments and supporting evidence fail to demonstrate that the Forest Service's decision was arbitrary and capricious. The Forest Service's analysis considered "spatial and temporal boundaries, how past activities have contributed to the existing condition, and whether the ecosystem can accommodate additional effects." The summary of that analysis is found in the Final EIS. Alliance is also incorrect that the habitat effectiveness calculations do not disclose accurate existing summer road densities. These disclosures can be found in the record, and were calculated according to road usage.

Fourth, the district court did not abuse its discretion when it denied Alliance's motion to supplement the administrative record with a newspaper article. *Inter alia*, the district court concluded "the article is not necessary to determine whether the agency has considered all relevant factors because the

agency considered the unverified sightings as part of its decision." The district court explained that the Forest Service took appropriate measures to assess whether grizzlies were present. Nothing in the October 16, 2011 Helena Independent Record newspaper article provides additional probative information.

Fifth, the Forest Service and the Fish and Wildlife Service determination that the grizzly bear is not a species that "may be present" in the Project area was not arbitrary and capricious. Section 7 of the ESA requires an agency to ensure that no discretionary action will "jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of [critical] habitat of such species." 50 C.F.R. § 402.12(a); *see* 16 U.S.C. § 1536(a)(2). Compliance with Section 7 begins by obtaining from the Fish and Wildlife Service "a list of any listed or proposed species or designated critical habitat that may be present in the action area." 16 U.S.C. § 1536(c)(1); 50 C.F.R. § 402.12(c)-(d). The Forest Service obtained that list and recorded its observations in the Record of Decision: "Grizzly bears . . . are not present in the Big Belts, according to . . . the [August 2, 2011] species list from the U.S. Fish and Wildlife Service . . . . However, there have been reported sightings of both species but observations remain unconfirmed." The Forest Service adequately investigated

these unverified grizzly sightings, including updating the record to show that the unverified sightings occurred outside of the Project area.

Alliance claims this was arbitrary and capricious because evidence exists that grizzlies are a migratory species that travel through the Project area along "linkage" zones. However, they provide no probative evidence for this claim. The Walker and Craighead (1997) study is based on a model not validated by field research and it states only generally that "the potential corridor offering the best chance of successful transit consists of the Gallatin, Bridger, and Big Belt mountain ranges." The Project area makes up only a small portion of the Big Belts.

**AFFIRMED.**